## Case No. 5,485.

### The GLOBE.

[11 N. Y. Leg. Obs. 327; 35 Hunt, Mer. Mag. 44 l.]

Circuit Court, S. D. New York. Oct., 1853.

#### COLLISION.

1. *Held*, that where the case of the party claiming damage for collision occurring during a dark night was sustained alone by the evidence of the pilot, who was also the only lookout, the same was not sufficiently reliable.

2. A more competent and reliable lookout might have been stationed to discharge this duty.

3. The vessel charged with fault had by a greater number of witnesses maintained the defence set up.

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel by the steamer Splendid against the scow Globe for damages caused by collision. The district court entered a decree dismissing the libel, without costs to either party (case unreported), and the libellants appealed to this court.]

For the Splendid it was set up (1) that she had kept a sufficient lookout during the night in question, and navigated safely from New York. (2) That after rounding Magazine Point, she had steered for Cold Spring light to make her usual land, and saw the scow bearing down to the westward of a line from Stony Point to Magazine Point. (3) That the scow at 500 yards began sheering to the eastward. (4) That the steamer slowed, stopped,

backed, and got stern way on her when just past the rocks Brothers, and the wind acting upon the saloon built upon her upper deck aft, swung her stern to the eastward, and her head to the west. (5) That while in this position, and within 100 feet of the rocks, the scow struck her stem. (6). That the steamer had not been sheered to the eastward, although her retrograde movement and the swing of her lights might have had that appearance from the scow.

For the scow it was alleged (1) That she had seen the lights of the Splendid sheer off to the east when off Magazine Point, and saw at the same time the light on another steamboat sheer off to the west shore. (2) That she was ignorant that the Splendid was making the Cold Spring landing. (3) That she luffed to give her more room. (4) That when the Splendid attained a position to the east of her about two lengths, and some hundred yards south, she suddenly sheered west and hailed the scow to put her helm up, which was done, that she had barely felt the change when the collision took place.

D. McMahon and W. Q. Morton, for the steamboat.

E. C. and C. W. Benedict, for the scow.

NELSON, Circuit Justice. The libel was filed in this case by the steamboat against the scow to recover damages for a collision that occurred on the North river, on the 6th November, 1850, about eleven o'clock at night, opposite the Two Brothers, a.ledge of rocks a little below Cold Spring. The steamboat was going up the river with a load of passengers for Hamburg, her place of destination, and the scow was descending with a cargo of lumber. The scow struck the steamboat nearly head on against her stem, a little to the starboard, knocking the stem out and breaking the planks so that she was obliged to be run on to the west shore, where she filled and sunk. The testimony is quite contradictory in the case, in respect to the management and course of the respective vessels; the persons on the steamboat maintaining, that after she had rounded Magazine Point, and was in her usual course for Cold Spring, one of her stopping places, and on the eastern shore of the river, the scow in descending the river on a course off her larboard bow, suddenly changed it more easterly, and persevered in the same until the collision occurred; while those on board the scow insist that she pursued her course down the river, giving a wide berth to the steamboat to pass on her larboard side; but that, as the two vessels neared each other, the steamboat took a sheer to the west and persevered in it till a collision was unavoidable. The night was very dark and the wind fresh from the northwest, the scow moving from five to six knots the hour, and the steamboat about eight. There were four hands on board the scow,—the captain, first and second

pilots and steward,—all of whom saw the steamboat at a considerable distance, and were on the lookout from the time she was first discovered until the collision, who concur in maintaining the position and course of the scow, and fault of the steamboat. While on the other side, the pilot was the only person on board who saw the scow until the moment of the collision. In this conflict of evidence, whatever may be the real truth of the course and management of the vessels preceding, and at the time of the accident, it is impossible for us to say, as the case stands, that the scow was in fault, so as to hold her responsible for the consequences. The misfortune of the steamboat is, that under the circumstances of the night and weather, she had no proper lookout on board, and hence, in addition to this neglect of prudence and of the established nautical rule, she is deprived of the usual and most important witness on these occasions as to the position and course of the two vessels. Although the pilot may be a witness deserving great consideration in respect to the course of his own vessel, he is not, from the necessity he is under of attending specially to his own peculiar duties, the best witness in respect to the position and course of the approaching vessel in a dark and cloudy night. A competent lookout, at a station the most favorable to discharge his duty, is much more reliable under such circumstaces. The scow has decidedly the advantage in this respect. Her master, in consequence of the darkness of the night, gave his helm to the pilot, and took the post of lookout himself; and as a consequence is enabled to give us a clear and intelligible account of the circumstances that led to the unfortunate accident, and he is confirmed by the other hands on board; and also, as far as they go, by the hands on board the sloop Index, in the vicinity at the time.

The gravamen of the libel is, that while the steamboat was on her course N. E. to Cold Spring, and passing in a direction as near the Two Brothers as was safe, the scow changed her course from her direction down the river to the eastward, which compelled the former to slow, and stop to avoid running upon the rocks, which with the wind had the effect to change her position, by swinging her bow westward, and while in this condition she was run into by the scow, which, at this time had come close to the rocks, and having the wind free, and should have borne further towards the middle of the river. But the difficulty is, the weight of the proofs is against this theory. No persons having been stationed on board the steamboat to look out, the night being dark, and none of the hands, but the pilot, having seen the scow till in the midst of the alarm, upon the ringing of the bells to slow and stop, we have no intelligible or reliable account of the transaction from her; and the persons on the dock at Cold Spring knew nothing about it, as the night was too dark for them to see it. It has also

been urged that the scow made a wrong manoeuvre at the time of the collision, by ordering the man at the helm to keep hard away, thereby bearing more to the eastward; but the hands upon the scow all agreed that this order was given from the steamboat, and was followed at the moment of the peril, in deference to the supposed superior opportunity and skill of those on board of her. Without pursuing the examination of the case further, I am satisfied the decree of the court below is right, and should be affirmed, but with costs of this court only.